HALEY v. THAMES.

1. The Court of Probate is not the proper tribunal in which creditors may sue to judgment either their debtors while living or the personal representatives of their deceased debtors.

2. Distributees of an estate cannot, without administration, charge their co-distributees as executors *de son tort* in the Court of Probate.

3. Distributees of an estate upon which there has been no administration are not unlawfully in possession of its assets, and therefore are not chargeable as executors *de son tort* as for intermeddling with such assets.

Before ALDRICH, J., Clarendon, May, 1888.

The opinion states the case. The Circuit decree was as follows :

Section 1906 is the old act of 1839, allowing the ordinary (now judge of probate) to cite before him persons who illegally take possession of the effects of deceased persons as *executors de son tort* to make them discover and account. In this case the parties in possession are rightfully in possession as heirs at law and distributees of the deceased. They are liable to account to the heirs and distributees, but must do so in an action for that purpose, and not as trespassers under this summary proceeding. The demurrer, or more properly plea to the jurisdiction, is well taken. The appeal is sustained, with ten dollars costs, and the proceedings before the Probate Court set aside.

REP.]                    November Term, 1888.

*Mr. B. P. Barron*, for appellant.

*Mr. J. F. Rhame*, contra.

March 6, 1889. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. On December 20, 1884, Hulda A. Thames, of Clarendon County, departed this life intestate, seized and possessed of a tract of land and some personal property, such as stock, household and kitchen furniture, &c. The intestate left no lineal descendants, but next of kin and collateral heirs as follows, viz., her husband, Rufus M. Thames, and a sister, Henrietta E. Ridgeway, the defendants, and also the plaintiffs (nephews and nieces), children and grandchildren of a predeceased sister, Margarette M. Haley, namely, Friendley W. Haley, Isaac A. Haley, Rachel A. White, Margaret V. Hodge, Edgar Haley, and Preston Haley. There has been no administration upon the estate of the intestate, but it seems that the defendants (husband and sister) being still on the tract of land and in possession of the personal property of the deceased, the nephews and nieces, the plaintiffs, instituted proceedings against them in the Probate Court, alleging that there were debts of the intestate unpaid, and "that the said Rufus M. Thames and Henrietta Ellen Ridgeway took charge and possession of the said real and personal property and estate of the said intestate, neither of them having been appointed administrator of the same, and thereupon proceeded to appropriate to themselves as their own property and goods and chattels, the entire estate, real and personal, disregarding and utterly ignoring the rights of the plaintiffs, or the rights of creditors, and have ever since, and are now, using and disposing of said property and the profits of the same, as if they were the sole owners thereof, &c. Whereupon the plaintiffs demand that the defendants be cited to appear before the court, &c., and then and there "discover and account for all the personalty of said estate, as well as the rents and profits of the land," &c.

The probate judge issued the citation as demanded, requiring the defendants to make a full discovery of all and singular the personalty and the annual income of the realty of the said estate.

The defendants pleaded to the jurisdiction : (1) That they were not brought into court in accordance with law. (2) That the proceeding is without warrant of law. (3) That the Probate Court is without jurisdiction to hear and determine any of the matters alleged in the complaint, or any of the issues that may arise thereunder, or to make any order or decree concerning the matters so alleged; and answered, admitting that Hulda Thames died intestate, "and that they are in possession of a tract of land, of which she died seized and possessed, and of some chattels, of which she died possessed, but not considerable in quantity or value, and they allege that their possession as aforesaid is lawful," &c.

The probate judge overruled the pleas to the jurisdiction, and ordered the defendants to proceed to make a discovery, which they declined to do. Thereupon the judge of probate, adjudging that the defendants were in contempt, ordered them to be attached and committed to jail, and made a formal order to that effect, and had it delivered to the sheriff. From these orders and judgment of the Probate Court the defendants appealed to the Circuit Court. Judge Aldrich reversed the judgment and orders of the Probate Court, and the case is now before this court on appeal upon the following exceptions by the plaintiffs: *First.* Because it was error in the Circuit Judge to hold that the defendants were lawfully in possession of the effects of the deceased. *Second.* Because it was error in the Circuit Judge to sustain the plea of the defendants to the jurisdiction of the Probate Court," &c.

This is certainly a case of novel impression, and at least demonstrates, if further proof were necessary, the wisdom of the policy which requires that there shall be a responsible representative of the estate of every one who dies possessed of property. Upon the death of Mrs. Thames, intestate, her land descended to her heirs, who have their rights in regard to it; but her personal property was derelict, and there should have been an administrator appointed, with legal title to it, for the purpose of administration; and if those entitled to it declined to take administration for six months, the clerk of the court for the county should have done so. (See section 1908, General Statutes.) The novelty of the case arises from the fact that although

there has been no administration, the action is brought in the Probate Court by persons claiming to be distributees of the intestate against other distributees of the same estate, requiring them "to make a discovery and account of all and singular the personalty of said estate, and of all matters and things pertaining to the same necessary to be done for the full and lawful administration and distribution of the same," not as regular executors or administrators of said estate, but as *executors de son tort* thereof, upon the allegation that they had intermeddled with and taken into their possession the said personal property without proper authority.

We have looked, with some care, through our cases upon the subject of *executors de son tort,* as to what is necessary to establish that character—its incidents, liabilities, &c. ; and we find that in all our cases where the party charged was held liable as such executor in his own wrong, the action was brought by a creditor or administrator of the deceased, and in the higher jurisdiction of law or equity. We have not been able to find a single case in which mere distributees, without administration, have, in the Probate Court, charged co-distributees as *executors de son tort.*

The plaintiffs are not regularly appointed administrators, and while the complaint does make a statement that there are liabilities still unsettled, they certainly do not claim as *creditors;* but if they did, the Court of Probate is not the proper tribunal in which creditors may sue to judgment either their debtors while living, or their personal representatives after their death. *Gregory* v. *Rhoden,* 24 S. C., 97. It is also quite clear, we think, that the proceeding in the Probate Court cannot be sustained as a regular citation to legal representatives for an account settlement and distribution of the estate ; for it is well settled that while executors in their own wrong are subjected to certain onerous liabilities, they have not all the rights of executors duly appointed. Their liability is, in its nature, essentially different. Such executors have no right to reduce assets, and are, therefore, not chargeable for not reducing and administering them. "When a man has so acted as to become in law an *executor de son tort,* he thereby renders himself liable, not only to an action by the rightful executor or administrator, but to be sued as an executor by a

18—30

creditor of the deceased, or by a legatee ; for an *executor de son tort* has all the liabilities, though none of the privileges, that belong to the character of an executor." 1 Wms. Exrs. (7 ed., with Perkins notes), 307, and note s. "But persons, chargeable as *executors de son tort*, are not liable to account to the next of kin, but to the duly appointed executor or administrator of deceased." Citing authorities, and among them our own case of *Hazelden* v. *Whitesides*, 2 Strobh., 353.

It is probably true, as argued, that the Court of Probate may, *ex officio*, grant letters *ad colligendum bona defuncti*, to gather up the personal property of the deceased. The plaintiffs, however, do not claim that they have any such appointment, but simply as distributees demand judgment of the Probate Court that their co distributees, the defendants, "discover and account for the property of the estate in their possession ;" and upon their denying such liability to the plaintiffs, the plaintiffs obtain from the probate judge an order declaring them to be in contempt, and directing them to be attached and committed to jail. There being no administrator with title and right to the possession, it is not easy to see what the Probate Court would do with it if delivered up. We suppose the court could not keep possession of it, and the defendants being at least as much entitled to it as the plaintiffs, to whom would it be delivered ? The Court of Probate does not, in modern times, itself take charge of intestate's estates, but acts through officers appointed by itself for the purposes of administration. It was held in *State* v. *Mitchell* (2 Bailey, 225), that "the ordinary has no jurisdiction to order the seizure out of the hands of persons in possession and claiming title of goods said to belong to an intestate's estate, although there has been no administration," &c.

But it is insisted that the proceeding in the Probate Court is authorized by the act of 1839, which is substantially embodied in section 1906 of the General Statutes, which declares that "the judge of probate of the county in which a deceased person may have died, shall have power (either of his own accord, or at the instance of any creditor or other person interested in the estate of the deceased) to cite before him such person or persons as, neither having been appointed executor, nor having obtained administra-

tration of the effects of such deceased person, shall, nevertheless, possess himself, or themselves, of the goods and chattels, rights and credits, of such persons deceased; and upon such person or persons being cited as aforesaid, the judge of probate shall require of him a discovery and account of all and singular the goods and chattels, rights and credits, of the deceased, and shall proceed to decree against him or them for the value of the estate and effects of the deceased which he or they may have wasted, or which may have been lost by his or their illegal interference, charging them as *executors in their own wrong* are made liable at common law, as far as assets shall have come into their hands," &c.

We always have inclined to think that this act was passed in the view and upon the assumption that there was in existence a regular administrator of the estate, or one capable of receiving and administering the property. As was said of a somewhat similar Massachusetts law, by Chief Justice Shaw, in the case of *Arnold* v. *Sabin* (4 Cush., 46), cited at the bar: "It is argued that the petition may be sustained, * * * if he is a creditor within the section of the revised statutes, which provides for complaint made 'by any executor, administrator, heir, legatee, creditor, or other person interested in the estate of any person deceased,'" &c. It is very questionable whether this is not limited by necessary implication to the case of a deceased person, whose estate is under administration, that is, one on which letters testamentary or letters of administration have been granted. How else is the jurisdiction of this process, which is in its nature subsidiary and interlocutory, to be determined by the judge of probate, if it is not by the fact that the estate is in process of settlement before him? Further, to what useful end would it conduce to inquire and ascertain if any person has property concealed or withheld, if there be no person qualified and authorized to demand it, or even to take into custody and give a legal acquittance for it, if voluntarily surrendered? From whom can it be said to be concealed, embezzled, or withheld?"

These just observations, in their application to our law of 1839, receive absolute vindication in the fact that the very act which originally gave us the section under consideration, also contained

another provision (section 7, act 1839, "concerning the office and duties of ordinary," 11 Stat., 40), which directed that the ordinary, now probate judge, should "collect and take charge of all derelict estates for six months, and if within that time no administration was applied for, to sell the same, and after the payment of the debts of the estate, to deposit the funds in the Bank of the State, or some of its branches," &c. So it clearly appears that at the time section 1906 originally became law the ordinary was made the legal representative of derelict estates, and had the right and title to demand "discovery and account" from any person in possession of property belonging to the estate. In connection with this provision, vesting the title of the property in the ordinary, or judge of probate, the section relied on was consistent and capable of practical enforcement. But that section of the act of 1839 was afterwards repealed; and, as before stated, it is now made the duty of the clerk of the court to apply for and take out regular administration upon such estates—the authority of the judge of probate being the same in respect to them as to all other intestates' estates—simply upon proper application to grant letters of administration and have them administered according to law. This change of the law, as it stood in 1839, should not, as it seems to us, be overlooked in attempting to give proper construction to section 1906 in respect to the powers and jurisdiction of the probate judge.

But if there is nothing in this view, we think that section 1906 must be construed in connection with the one immediately preceding (1905), which, as we understand it, substantially declares, in accordance with the old statute of 43 Eliz., c. 8, that the conduct which will make one liable as an *executor de son tort*, must be illegal in character. See *Cook* v. *Sanders*, 15 Rich., 64. The old books give this as the definition: "If a stranger takes upon himself the office of executor *by intrusion*, not being so constituted by the deceased, nor appointed administrator," &c. See 1 *Tomlin's Law Dictionary*, title "executor."

We agree with the judge below, that the defendants, as heirs at law and distributees of the intestate, were not, *quoad* the plaintiffs, unlawfully in possession, and that they were not liable as

trespassers under the summary proceedings of the Probate Court. This disposes also of the question as to the contempt.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.